LEROY J. MORITZ v. FRANCIS I. duPONT & CO.

189 N. W. (2d) 487.

August 20, 1971—No. 42831.

*Lifson, Kelber, Abrahamson & Weinstein* and *Carl K. Lifson,* for appellant.

*Dorsey, Marquart, Windhorst, West & Halladay, James H. O'Hagan,* and *Robert A. Heiberg,* for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Kelly, JJ.

PER CURIAM.

Plaintiff has brought this action against his former employer to recover some $15,000 which he claims was due him from a retirement fund at the time his employment was terminated. The only issue is whether the rules of the New York Stock Exchange by which he agreed to be bound, which provide for arbitration in the event of a controversy

over employment, constitute a written agreement within the meaning of Minn. St. 572.08. The trial court held that it did, and we affirm.

Plaintiff, Leroy Moritz, began his employment with defendant, Francis I. duPont & Co., stock and commodity brokers, in 1954. In January 1957, he applied for approval as a registered representative and agreed in writing "to abide by the Constitution and Rules of the Board of Governors of the New York Stock Exchange as the same have been or shall be from time to time amended." In February 1966, Rule 345, par. .17(J), was adopted by the Exchange, as follows:

"I [a registered representative] agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of any employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and rules then obtaining of the New York Stock Exchange."

In January 1967, plaintiff was made a comanager of the company's Minneapolis office, but in December 1967 was demoted to an ordinary salesman. On February 26, 1968, he submitted his resignation. He alleges he was in fact constructively dismissed because of "intolerable and humiliating conditions of employment" imposed on him. This raises the issue of whether he voluntarily left the services of the company within the meaning of the following provision of the retirement plan, thereby forfeiting his retirement benefits:

"In the event that an employee should voluntarily leave the service of the Company or be dismissed for dishonesty, such employee shall not be entitled to receive any payment from the fund and the amount of his interest in the fund at the time of his separation shall become forfeited and shall inure to the benefit of all the other participants in the fund * * *."

Plaintiff brought this action for a declaratory judgment to establish his rights under the retirement fund. Defendant invoked the arbitration provisions of the New York Stock Exchange rules. Plaintiff asserts they do not govern as there is no written agreement as required by Minn. St. 572.08.[1] Plaintiff further argues that the arbitration rule ap-

---

[1] Pertinent provisions of Minn. St. 572.08 are as follows: "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."

plies only to those who seek approval as registered representatives after its adoption in 1966. Finally, he contends that he cannot be bound by arbitration since he was never given notice that it had become a stock exchange rule.

We find no merit in these contentions. The formal rules adopted by the New York Stock Exchange were reduced to writing when they were promulgated. Copies of the rules were available to all brokerage houses and their employees. They were incorporated by reference in plaintiff's application for registration executed in 1957. He undertook to be governed by them. It was incumbent on him to keep apprised of amendments since he could anticipate there would be additions from time to time. There was no obligation on his employer to give him formal notice and nothing in the contract imposed that duty on the employer. Presumably the amendments were equally available to employer and employee.

By the application signed in 1957, plaintiff was pledged to abide by the rules of the New York Stock Exchange "as the same have been or shall be from time to time amended." Consequently, it is clear that the amendments were not limited to prospective application but applied to all who were registered at the time the arbitration provision was added.

In his concluding argument plaintiff attacks the philosophy of compulsory arbitration in employment disputes. That issue does not require discussion since we hold the plaintiff has bound himself to come under our arbitration statute.

The order to proceed with arbitration is affirmed.

Affirmed.